IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANTIONE ROOSEVELT HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:06-CV-121-MHT |
| | ) | |
| JIMMY ABBETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Tallapoosa County Sheriff Jimmy Abbett and Jail Administrator Blake Jennings, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On February 8, 2006, Plaintiff Antione Harris[1] filed his Complaint in the United States District Court for the Middle District of Alabama.  The Plaintiff named as Defendants Sheriff Abbett, Jail Administrator Jennings, and the Alabama Department of Corrections.  On February 13, 2006, the Magistrate Judge entered a Report and Recommendation that the Alabama Department of Corrections be dismissed prior to service of process in accordance with the provisions of 28 U.S.C.  1915(e)(2)(B)(i).  That same day, this Court ordered the remaining Defendants to file a Special Report and Answer within forty days of the date of the order.

Plaintiff was arrested on October 12, 2005, on a charge of Failure to Pay regarding a conviction of Assault in the Third Degree, and two charges of Failure to Appear regarding a conviction for Disorderly Conduct and a conviction for Public Intoxication.  (Exhibit A, Inmate

---

[1] Plaintiff uses the names Antione Madden Harris and Antione Roosevelt Harris.  (Ex. B, Inmate File, Order re Case No. CC-98-98.)

File of Antione Harris[2], "Inmate File," Alabama Uniform Arrest Report dated October 12, 2005;

Exhibit B, Inmate File, Order regarding Case No. CC-98-98; Exhibit C, Inmate File, Writ of

Arrest regarding Case No. CC 1998-98 dated October 12, 2005; Exhibit D, Inmate File, Writ of

Arrest regarding Case No. DC 2002-583 dated October 12, 2005; Exhibit E, Inmate File, Alias

Warrant regarding Case No. 2002-582 dated October 12, 2005; Exhibit F, Alabama SJIS CC/DC

Case Detail regarding Case No. CC 1998-98; Exhibit G, Alabama SJIS CC/DC Case Detail

regarding Case No. DC 2002-583; Exhibit H, Alabama SJIS CC/DC Case Detail regarding Case

No. DC 2002-582.)  He was booked into the Tallapoosa County Jail that same day.  (Exhibit I,

Inmate File, Tallapoosa County Jail In-Processing Check List dated October 12, 2005.)  On

October 15, 2005, the Plaintiff was served with another warrant for Failure to Appear on a

charge on which he had not been convicted.  (Exhibit J, Inmate File, Alabama Uniform Arrest

Report dated October 15, 2005; Exhibit K, Alias Warrant regarding Case No. DC 2004-113

dated March 30, 2005; Exhibit L, Alabama SJIS CC/DC Case Detail regarding Case No. DC

2004-113.)  The Plaintiff was released from the Tallapoosa County Jail into the custody of

Alexander City, Alabama, on March 6, 2006.  (Exhibit M, Inmate File, Inmate Intake and

Release; Exhibit N, Inmate File, Inmate Release to Another Agency dated March 6, 2006.)

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that, on October 20, 2005, Henry Murphy, another inmate, stole a

razor and cut him.  (Plaintiff's Complaint, pp. 2-3.)  He alleges that Henry Murphy had been

sentenced for over 30 days but had not been transferred to the Department of Corrections (DOC)

in violation of "Federal injuncture." (Plaintiff's Complaint, pp. 2-3.)  He further alleges that

Murphy was psychotic and was not taking his medication as directed and that Murphy had been

convicted of a violent offense.  (Plaintiff's Complaint, p. 3.)  Finally, he states that Murphy

---

[2] For authentication of the Plaintiff's Inmate File, see Exhibit P, Affidavit of Blake Jennings, "Jennings aff.," ¶ 20.

assaulted another inmate and was convicted of 2nd degree assault and was still not transferred to DOC.  (Plaintiff's Complaint, p. 3.)  The Plaintiff requests compensatory damages and injunctive relief.  (Plaintiff's Complaint, p. 4.)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit O, Affidavit of Sheriff Jimmy Abbett[3], "Abbett aff.," ¶ 4; Exhibit P, Affidavit of Blake Jennings[4], "Jennings aff.," ¶ 4.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

**I.     FACTS**

Sheriff Jimmy Abbett has delegated the responsibility for the day-to-day functions of the Tallapoosa County Jail to Blake Jennings, the Jail Administrator for Tallapoosa County.  As Sheriff of Tallapoosa County, Sheriff Abbett is responsible for promulgating the policies governing the Tallapoosa County Jail.  (Abbett aff., ¶ 5.)  Sheriff Abbett has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.  (Abbett aff., ¶ 3.)

---

[3] Sheriff Abbett is the duly elected Sheriff of Tallapoosa County, Alabama.  He has served as Sheriff since 1995.  Prior to serving as Sheriff, Sheriff Abbett retired from the Alabama Bureau of Investigation where he served as an Investigator.  (Abbett aff., ¶ 2.)

[4] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998.  He served as an Investigator from 1998 until he became the Jail Administrator on March 19, 2005.  Jail Administrator Jennings is a graduate of the Corrections Academy.  (Jennings aff., ¶ 2.)

It is the policy of the Tallapoosa County Jail that a known enemies list be maintained on inmates incarcerated at the jail. (Abbett aff., ¶ 6; Jennings aff., ¶ 5; Exhibit Q, Affidavit of Ava Mason[5], "Mason aff.," ¶ 11; Exhibit R, Affidavit of Chris Nail[6], "Nail aff.," ¶ 12.) Inmates are given the opportunity at the time of booking to make the booking officer aware of any known enemies in the jail. (Abbett aff., ¶ 7; Jennings aff., ¶ 6; Mason aff., ¶ 12; Nail aff., ¶ 13.) Further, the known enemies list is updated if any Tallapoosa County Jail officer becomes aware of additional enemies. (Abbett aff., ¶ 8; Jennings aff., ¶ 7; Mason aff., ¶ 13; Nail aff., ¶ 14.) Inmates are housed separately from any known enemies. (Abbett aff., ¶ 9; Jennings aff., ¶ 8; Mason aff., ¶ 14; Nail aff., ¶ 15.) An inmate may make an oral or written request at any time to any officer to be moved to a different cell if he has been threatened or is otherwise in danger. Each cell is equipped with an intercom, so an inmate may make such a request at any time. (Abbett aff., ¶ 10; Jennings aff., ¶ 9; Mason aff., ¶ 15; Nail aff., ¶ 16.) All Tallapoosa County Jail officers understand that such a request is to be taken seriously. In the event an inmate requests to be moved because he has been threatened or is otherwise in danger, that inmate will be moved immediately. (Abbett aff., ¶ 11; Jennings aff., ¶ 10; Mason aff., ¶ 16; Nail aff., ¶ 17.)

It is the policy of the Tallapoosa County Jail that, anytime an assault takes place in the Tallapoosa County Jail, the responding officers are to ensure that any medical needs are met, involved inmates are separated, and an investigator from the Tallapoosa County Sheriff's Department is called to investigate the incident. The responding officers must also complete an

---

[5] Ava Mason is employed as a Corrections Officer at the Tallapoosa County Jail and has been so employed since March 11, 2002. On October 3, 2004, Mason was promoted to Sergeant. Ava Mason graduated from the Corrections Academy on September 20, 2002. (Mason aff., ¶ 2.)

[6] Chris Nail is employed as a Corrections Officer at the Tallapoosa County Jail. He has been employed in that capacity since February 19, 2004. Nail was promoted to the rank of Sergeant on January 6, 2006. Chris Nail graduated from the Corrections Academy on June 17, 2004. (Nail aff. ¶ 2.)

incident report regarding the matter.  (Abbett aff., ¶ 15; Jennings aff., ¶ 16; Mason aff., ¶ 19; Nail aff., ¶ 20.)

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates, and this policy is made known to the inmates upon their admission to the Jail via the Inmate Rules and Regulations Handbook.  It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have.  Any officer receiving a grievance form is to pass the grievance on to either Jail Administrator Jennings or the Lieutenant for appropriate handling.  A copy of any grievance form which is filed by an inmate is placed in the inmate's Inmate File.  (Abbett aff., ¶ 16; Jennings aff., ¶ 17; Mason aff., ¶ 20; Nail aff., ¶ 21.)  Upon the Jail Administrator's review of the Plaintiff's inmate file, there is no grievance filed.  (Jennings aff., ¶ 18.)  Further, the Defendants never received a grievance from the Plaintiff regarding the incident made the basis of this Complaint.  (Abbett aff., ¶ 17; Jennings aff., ¶ 18.)  The Defendants have complied with all policies and procedures of the Tallapoosa County Jail.  They are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Abbett aff., ¶ 18; Jennings aff., ¶ 19; Mason aff., ¶ 21; Nail aff., ¶ 22.)

The Plaintiff had never requested to be separated from Henry Murphy.  (Jennings aff., ¶ 11; Mason aff., ¶ 17; Nail aff., ¶ 18.)  Further, the officers were never aware of any problems between the Plaintiff and Murphy until after the incident made the basis of the Complaint took place.  Afterwards, it was learned that the incident occurred after the two inmates had a fight over the volume of the television in their cell.  (Jennings aff., ¶ 11; Mason aff., ¶ 17; Nail aff., ¶ 18.)  Neither the Plaintiff nor anyone else had ever made the Defendants aware that the Plaintiff had

been threatened by Murphy or felt that he was in danger because he was housed with Murphy. The Plaintiff never asked either of the Defendants to separate him from Murphy.  (Abbett aff., ¶ 14; Jennings aff., ¶ 13.)  Had the Plaintiff made any of the officers aware that he was threatened by Murphy, he would have been separated from Murphy immediately.  (Abbett aff., ¶ 12; Jennings aff., ¶ 12.)  However, despite having the opportunity, the Plaintiff never made any of the officers aware of such.  (Jennings aff., ¶ 12; Mason aff., ¶ 18; Nail aff., ¶ 19.)

The incident made the basis of the Complaint occurred during the night shift, and the Defendants were not present at the Jail at that time.  (Abbett aff., ¶ 13; Jennings aff., ¶ 14.)

On October 25, 2005, Ava Mason was the on-duty sergeant on the night shift, and Chris Nail was on duty as a corrections officer.  (Mason aff., ¶ 5; Nail aff., ¶ 5.)  That night at approximately 10:04 p.m., Sergeant Mason was called to the control room and advised that an inmate had called over the intercom and reported that one inmate had cut another inmate with a razor in Cell B-1.  (Mason aff., ¶ 6; Exhibit S, Incident Report dated October 25, 2005, "Incident Report.")  Corrections Officer Baker called Corrections Officer Nail to go to Cell B-1 with him, and they immediately responded to Cell B-1.  (Mason aff., ¶ 6; Nail aff., ¶ 6; Incident Report.)  When Officers Nail and Baker arrived at B-1, the Plaintiff showed them cuts on his left arm.  He told the officers that Henry Murphy had cut him with a razor.  (Nail aff., ¶ 7; Incident Report.)  The officers brought the Plaintiff to the visitation room and placed Murphy in Cell B-7.  (Nail aff., ¶ 8; Incident Report.)  The officers then went back to Cell B-1 to try to locate the razor.  The other inmates in that cell informed the officers that Murphy had flushed the razor down the toilet after cutting the Plaintiff.  (Nail aff., ¶ 9; Incident Report.)

When the Plaintiff was brought to the visitation room, Sergeant Mason observed superficial cuts on his left arm.  (Mason aff., ¶ 8.)  Sergeant Mason called Nurse Cathy Dubose

and described the cuts to her. Nurse DuBose instructed Sergeant Mason on how to care for the superficial cuts until Nurse DuBose could see the Plaintiff the next morning. (Mason aff., ¶ 8; Exhibit T, Affidavit of Nurse Cathy DuBose, "DuBose aff.," ¶ 4.) The next morning Nurse DuBose saw the Plaintiff and observed the superficial slash marks to his left upper arm. Nurse DuBose cleaned the cuts with hydrogen peroxide and applied triple antibiotic ointment and a dressing. Nurse DuBose also administered a tetanus shot in the Plaintiff's right upper arm, and started him on Keflex, an antibiotic, and Extra Strength Tylenol for seven days. (DuBose aff., ¶ 5; Exhibit U, Inmate Medical File of Antione M. Harris, "Medical File," Progress Notes dated October 26, 2005; Exhibit V, Medical File, Medications/Physician Orders dated October 26, 2005; Exhibit W, Medical File, Medication Administration Records dated October 26, 2005 through October 31, 2005, and November 1, 2005 through November 30, 2005.) The Plaintiff was given his prescribed medication. (Medical File, Medication Administration Records dated October 26, 2005 through October 31, 2005, and November 1, 2005 through November 30, 2005.)

Per Jail policy, Beverley Argo, an investigator from the Tallapoosa County Sheriff's Department, was called in on the night of the incident to investigate. (Mason aff., ¶ 9; Nail aff., ¶ 10; Exhibit X, Affidavit of Beverley Argo[7], "Argo aff.," ¶ 4.) Investigator Argo took statements of all the inmates in that cell except for Henry Murphy who chose not to give a statement. (Argo aff., ¶ 5.) The Plaintiff informed Investigator Argo that sometime around 10:00 p.m., he was lying in his bunk while Murphy and some of the other inmates were sitting at the table playing cards when he and Murphy had an argument about the television volume. He

---

[7] Beverley Argo is employed as an Investigator by the Tallapoosa County Sheriff's Office and was so employed on October 25, 2005. She has been employed in that capacity since March 2005. Prior to serving as an investigator, Argo was employed as a Deputy Sheriff for approximately one year. (Argo aff., ¶ 2.)

told Argo that, after this argument, while he was in his bunk, Murphy came up beside him hitting him in the arm. The Plaintiff stated that he did not know that Murphy was cutting him until he got away from him and went to the other side of the cell. The Plaintiff stated that some of the other inmates hit the intercom button and the officers came to the cell. (Argo aff., ¶ 6.) None of the inmates indicated to Investigator Argo that the Plaintiff and Murphy had had any type of problems with one another prior to this incident. (Argo aff., ¶ 7.)

The Plaintiff swore out a warrant against Henry Murphy. As a result of this incident, Murphy was charged with Second Degree Assault, and he has been indicted on this charge. (Argo aff., ¶ 8.) Murphy was also charged with a disciplinary violation and found guilty as a result of this incident. He was sentenced to serve time in isolation as a result of this offense. (Jennings aff., ¶ 15.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county

sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and, accordingly, claims against them in their official capacities fail to state a claim upon which relief can be granted.  <u>Id.</u>; <u>Carr</u>, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Jail.  Second, he has not alleged that he pursued any grievance through the State Board of Adjustment.  <u>See</u> <u>Brown v. Tombs</u>, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Despite the availability of a grievance procedure at the Tallapoosa County Jail, the Plaintiff did not file a grievance regarding the incident made the basis of his Complaint.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to <u>Ala. Code</u> § 41-9-60.  The Sheriff of Tallapoosa County is a state officer, as are his

alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former §1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

   **2.      Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

   No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002) (quotation marks omitted).  The evidence shows that the Plaintiff only had superficial cuts on his arm as a result of the incident made the basis of his Complaint.  Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

   **C.      Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Jail

Administrator of Tallapoosa County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into

constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (U.S. 1994). A jail officer only violates the Eighth Amendment when two conditions are met: (1) the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 834 and 837. Deliberate indifference is roughly equivalent to recklessness: "acting or failing to act with deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that risk." Id. at 836.

The Eleventh Circuit considered a case *where the inmate had not requested protection from the other inmate involved and where the officer had no knowledge of a threat prior to the injury, and concluded that a plaintiff's failure to protect claim must fail.* Carter v. Galloway, 352 F.3d 1346, 1349-51 (11th Cir. 2003) ("[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." Id. at 1350.); see also McBride v. Rivers, 2006 WL 622591, * 3 (11th Cir. 2006)[8] (holding that, where the plaintiff "did not identify a specific prior incident [to the defendant], from which the defendant could infer that a substantial risk existed," the plaintiff's failure to protect claim failed); Johnston v. Crosby, 135 Fed. Appx. 375, *2 (11th Cir. 2005)[9] (holding that, where there was no evidence indicating that the plaintiff notified the defendants of any particularized threat, the plaintiff failed to show "deliberate indifference to a substantial risk of serious harm and, thus, a violation of the Eighth Amendment.") "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (U.S. 1994). In Carter,

---

[8] In accordance with CTA11 Rule 36-2, a copy of this opinion is attached hereto as Exhibit Y.
[9] In accordance with CTA11 Rule 36-2, a copy of this opinion is attached hereto as Exhibit Z.

the facts were as follows:

> Defendants' [sic] clearly knew that Inmate Barnes was a "problem inmate" with a well-documented history of prison disobedience and had been prone to violence. Defendants also had specific notice from Plaintiff that Inmate Barnes acted crazy, roaming his cell like a "caged animal." . . . Defendant Galloway, serving as a Deputy Warden, heard many complaints from Plaintiff. But Plaintiff never told Galloway that Plaintiff feared Barnes or that Barnes clearly threatened Plaintiff. Plaintiff complained about Barnes acting crazy, wanting to fake a hanging, and making a statement that Plaintiff would help in the fake hanging "one way or another."

Carter, 352 F.3d at 1349. The Court in Carter held that "before defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [the inmate's] generally problematic nature." Id.

The alleged facts in the instant case are even less serious than the facts presented in Carter, where no constitutional violation was found. In the case at bar, the Plaintiff alleges that Murphy was a problem inmate. However, just like the plaintiff in Carter, Plaintiff Harris has not alleged that he ever told the Defendants that he feared Murphy or that Murphy had threatened him. Moreover, in the instant case, there is no allegation that the Defendants even knew that Murphy was a "problem inmate." In the instant case, Plaintiff has not shown that he was faced with substantial risk of serious harm, nor can he show that the Defendants were aware of any such risk. The Plaintiff does not allege that the Defendants were aware of any such risk, and the Defendants have testified that they did not, in fact, have any knowledge of such a risk. The Plaintiff had not requested protection from the other inmate involved, and the Defendants had no knowledge of a threat prior to the injury. And, just like the Plaintiff in McBride, the Plaintiff did not identify a specific prior incident to the Defendants from which they could infer that a substantial risk existed. Therefore, according to the law of the Eleventh Circuit, his failure to protect claim must fail.

Because in the case at bar, the Plaintiff cannot show that the Defendants were "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exist[ed]" and that the Defendants actually drew the inference, the Plaintiff has failed to meet his burden in establishing deliberate indifference to a substantial risk of serious harm, and accordingly, he has failed to establish a constitutional violation.  See, e.g., Johnston v. Crosby, 135 Fed. Appx. at *2.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

In light of applicable Eleventh Circuit law, it is obvious that the Defendants have done nothing to cross any bright line of clearly established constitutional law.  Therefore, the Plaintiff cannot meet his burden in this regard, and the Defendants are entitled to qualified immunity on Plaintiff's claims.

**D.    Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988, 999 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397, 401 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Abbett or Jail Administrator Jennings were in any way personally involved in any alleged violation of Plaintiff's constitutional rights.  Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts to show that Sheriff Abbett or Jail Administrator Jennings personally participated in his claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights.  In fact, the Plaintiff never alleged facts showing that the Defendants were aware that he was in danger because he was housed with Murphy, and the testimony of the Defendants show that they were not aware of any such danger.  Further, neither Defendant was even present at the time of the incident made the basis of the Plaintiff's Complaint.

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a

> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged deprivation, and he fails to do so.  The deprivations that
> constitute widespread abuse sufficient to notify the supervising official must be
> "obvious, flagrant, rampant and of continued duration, rather than isolated
> occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations
> omitted).

193 F.3d at 1269.  The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants.  As such, all Plaintiff's claims are due to be dismissed.

### E.    Plaintiff's claims for injunctive relief are moot.

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims.  See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998).  In the instant case, the Plaintiff cannot overcome this initial hurdle with regard to his claim for injunctive relief because the Plaintiff's claims for injunctive relief are moot. "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).  Because Plaintiff has been released from the Tallapoosa County Jail, his claims for injunctive relief are moot.  Zatler, at 399 ("In view of [the plaintiff's] subsequent release [from the correctional facility where claims arose], we find that his claims for declaratory and injunctive relief are now moot."); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been

transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." (citations omitted)); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that prisoner's claim for injunctive relief was moot and properly dismissed, where prisoner had been transferred from county jail in which unconstitutional conditions allegedly existed); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." (citation omitted)). Accordingly, to the extent that the Plaintiff's Complaint seeks injunctive relief, it fails for lack of subject matter jurisdiction.

### F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[10] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions,

---

[10] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Antione Roosevelt Harris, in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 27th day of March, 2006.

> **s/Amanda Kay Morgan**
> GARY L. WILLFORD, JR. Bar Number:  WIL198
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of March, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Antione Roosevelt Harris
Tallapoosa County Jail
316 Industrial Park Dr.
Dadeville, AL 36853

**s/Amanda Kay Morgan**
OF COUNSEL